*No. 14-56431*

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

*In re R2D2, LLC,*

*Debtor.*

Jeffrey K. Garfinkle and Buchalter Nemer, A Professional Corporation,

*Appellants,*

v.

Ronald L. Durkin,

*Appellee.*

_____

Appeal from the United States District Court for the Central District of California
Hon. Philip S. Gutierrez
Case No. 2:14-cv-02207-PSG

_____

## APPELLANTS' OPENING BRIEF

_____

GEORGE C. WEBSTER II (SBN 82870)
SHELDON EISENBERG (SBN 100626)
ALEXIS N. BURGESS (SBN 279328)
DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, CA  90067-1517
Telephone: (310) 203-4000
Facsimile:  (310) 229-1285

Attorneys for Appellants
Jeffrey K. Garfinkle and Buchalter
Nemer, A Professional Corporation

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Buchalter Nemer, A Professional Corporation states that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION..................................................................1

STATEMENT OF ISSUES FOR REVIEW .....................................................2

STATEMENT OF THE CASE............................................................................4

    I.     The Underlying Bankruptcy Proceedings and Appeals ........................4

    II.    The Stay Orders.................................................................................6

    III.   The OSC .............................................................................................9

    IV.   Appellants' Arguments in Response to the OSC ................................11

    V.    Order Sanctioning Appellants .............................................................18

    VI.   The Present Appeal ...........................................................................23

SUMMARY OF ARGUMENT ........................................................................24

ARGUMENT ...................................................................................................26

    I.     Standard of Review ..........................................................................26

    II.    The District Court Clearly Erred In Imposing Sanctions Under
Its Inherent Powers..........................................................................26

    A.    Appellants' Actions Did Not Amount to a Violation of the Stay
Orders, Much Less Willful Disobedience of Those Orders.................27

    B.    To the Extent Sanctions Were Alternatively Imposed Under the
Court's Inherent Powers for Appellants' Purportedly Bad Faith
Justification of Their Actions, the District Court Abused Its
Discretion In Finding Bad Faith........................................................32

        1.    The Court Applied The Incorrect Legal Standard
and Failed to Make Any Finding That Appellants
Acted with an "Improper Purpose" ................................33

        2.    The Court Also Based its Finding That Appellants
Acted "Knowingly" or "Recklessly" on
Insufficient Evidence ......................................................35

    III.   The District Court Also Erred In Imposing Sanctions Under 28
U.S.C. § 1927 ...................................................................................40

    A.    The Court Imposed Section 1927 Sanctions Without Any
Evidence of Subjective Bad Faith......................................................40

        1.    Appellants' Argument Was Not Frivolous......................41

2.    There Was No Evidence of Recklessness ........................46

B.    Section 1927 Does Not Support the Issuance of Sanctions for the Additional Reason that Appellants's Purportedly Sanctionable Conduct Did Not Actually Multiply the Proceedings ...........................................................................46

IV.   In Any Event, the District Court Provided Insufficient Advance Notice of the Particular Grounds for Sanctions, Meriting Reversal on Independent Due Process Grounds ...................................49

A.    The District Court Provided Absolutely No Advance Notice That Would Have Enabled Appellants to Properly Defend Themselves From Section 1927 Sanctions. ........................................50

B.    The District Court Also Provided Inadequate Notice that Appellants Would Be Sanctioned Under the Court's Inherent Powers ...........................................................................................51

CONCLUSION ............................................................................................53

CERTIFICATE OF COMPLIANCE ........................................................54

## <u>TABLE OF AUTHORITIES</u>

**CASES** .................................................................................................. **PAGES**

*Am. Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*,
   714 F. 2d 1266, 1275 (5th Cir. 1983). ............................................................7

*Autorama Corp. v. Stewart*,
   802 F.2d 1284, 1288 (10th Cir. 1986) ...........................................................46

*Barber v. Miller*,
   146 F.3d 707, 711 (9th Cir. 1998); ...............................................................35

*Barclay v. Swiss Fin. Corp. (In re Midland Euro Exch.)*,
   347 B.R. 708, 717-18 (Bankr. C.D. Cal. 2006) ...............................................7

*Barnd v. City of Tacoma*,
   664 F.2d 1339, 1343 (9th Cir.1982) ...............................................................32

*Brewster v. Sun Trust Mortgage, Inc.*,
   742 F.3d 876, 879 (9th Cir. 2014) ..................................................................29

*Campbell v. Wood*,
   18 F.3d 662, 688 (9th Cir. 1994) .....................................................................44

*Chambers v. NASCO, Inc.*,
   501 U.S. 32, 44 (1991) .....................................................................................26

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384, 405 (1990) .................................................................................26

*Desta v. Ashcroft*,
   365 F.3d 741, 750 (9th Cir. 2004) ...................................................................44

*Doe v. Univ. of the Pac.*,
   2010 WL 5129530 at *1 (E.D. Cal. Dec. 8, 2010) ..........................................40

*Estate of Blas v. Winkler*,
   792 F.2d 858, 860 (9th Cir. 1986) ...................................................................40

*Ex parte GMAC Mortgage, LLC*,
   2013 WL 4873071 at *4 (Ala. Sept. 13, 2013) ...............................................29

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
   980 F.2d 125, 131 (2d Cir. 1992) ......................................................................7

*Fink v. Gomez*,
   239 F.3d 989, 993 (9th Cir. 2001) ............................................................. 32, 33

*Foster v. Wilson*,
   504 F.3d 1046, 1052 (9th Cir. 2007) ........................................................ 50, 51, 53

*Gibson v. Attorney General*,
   561 F.3d 920, 929 (9th Cir. 2009) ...................................................................45

*Harris v. Polskie Linie Lotnicze*,
    820 F.2d 1000, 1005 (9th Cir. 1987) ...................................................... 37, 39

*Hi-Lex Controls, Inc. v. Blue Cross & Blue Shield of Michigan*,
    No. 11-12557, 2014 WL 3928451, at *3 (E.D. Mich. Aug. 12, 2014) ........44

*In re Atlas Mach. & Iron works, Inc.*,
    239 B.R. 322, 330 (E.D. Va. 1998) ...............................................................30

*In re Derringer*,
    375 B.R. 903, 909 (10th Cir. 2007) ..............................................................30

*In re Deville*,
    361 F.3d 539, 547 (9th Cir. 2004) ............................................. 26, 49, 50, 51

*In re Dyer*,
    322 F.3d 1178, 1196 (9th Cir. 2003) ...................................... 26, 38, 52

*In re Keegan*,
    78 F.3d 431, 436 (9th Cir. 1996), ...................................................... 33, 40, 41

*In re Peters*,
    642 F.3d 381, 384 (2d Cir. 2011) ........................................................ 26, 30

*In re Roach*,
    660 F.2d 1316, 1318-19 (9th Cir. 1981)..................................... 30, 31, 45

*Int'l Longshoremen's Ass'n, Local 1291 v. Phil. Marine Trade Ass'n*,
    389 U.S. 64, 75 (1967) ..................................................................................28

*Karam v. City of Burbank*,
    352 F.3d 1188, 1195 (9th Cir. 2003) ...........................................................41

*Lahiri v. Universal Music and Video Dist. Corp.*,
    606 F.3d 1216, 1221 (9th Cir. 2010 ...........................................................37

*Levin v. Century Indem. Co.*,
    279 Mass. 256, 259 (1932) ..........................................................................29

*MGIC Indem. Corp. v. Moore*,
    952 F.2d 1120, 1122 (9th Cir. 1991) ..................................................... 35, 39

*Miller v. City of Los Angeles*,
    661 F.3d 1024, 1024 (9th Cir. 2011) ...................................... 27, 28, 30, 32

*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*,
    210 F.3d 1112, 1118 n.12 (9th Cir. 2000) ...................................................41

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
    115 F.3d 644, 649 (9th Cir. 1997) ....................................................... passim

*Rajala v. Gardner*,
    709 F.3d 1031, 1038-39 (10th Cir.), *cert. denied*,
    134 S. Ct. 164 (2013)....................................................................................7

*Reno Air Racing Ass'n, Inc. v. McCord*,
  452 F.3d 1126, 1132 (9th Cir. 2006) ...................................... 28, 30

*Roadway Express, Inc. v. Piper*,
  447 U.S. 752, 764 (1980) ................................................................33

*Sgaraglino v. State Farm Fire & Cas. Co.*,
  896 F.2d 420, 421 (9th Cir. 1990) ................................................44

*Ted Lapidus, S.A. v. Vann*,
  112 F.3d 91, 96 (2d Cir. 1997) ............................................. 49, 51

*Toombs v. Leone*,
  777 F.2d 465, 472 (9th Cir. 1985) ................................................35

*U.S. Bank Nat'l Assoc. v. Schumacher*,
  467 Mass. 421, 430 (2014) ............................................................28

*U.S. v. Holtzman*,
  762 F.2d 720, 726 (9th Cir. 1985) ................................................28

*West Coast Theater Corp. v. City of Portland*,
  897 F.2d 1519, 1526 (9th Cir. 1990) ............................................26

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
  564 F.3d 110, 114 (2d Cir. 2009) ......................................... 32, 41

*Yagman v. Republic Ins.*,
  987 F.2d 622, 628 (9th Cir. 1993) ................................................32

*Zambrano v. City of Tustin*,
  885 F.2d 1473, 1481 (9th Cir. 1989). ...........................................26

**STATUTES**

11 U.S.C. § 362 .............................................................................5, 30

28 U.S.C. § 1927 .......................................................................passim

U.S.C. § 541(a)(3) ..............................................................................7

**RULES**

Fed. Rule of Evid. 404(b) ................................................................38

Federal Rule of Civil Procedure 62(d) ............................................44

Federal Rule of Civil Procedure 65(d) ...................................... 28, 44

## STATEMENT OF JURISDICTION

The Bankruptcy Court had jurisdiction over the adversary proceeding and contested matter underlying this appeal involving Library Asset Acquisition Company ("LAAC") and Zelus, LLC "(Zelus") (collectively the "LAAC Parties"), on the one hand, and appellees Screen Capital International Corp. ("SCIC") and Ronald Durkin (the "Trustee") (collectively the "Appellees"), on the other hand, under 28 U.S.C. §§ 1334 and 157(b)(1).

On July 22, 2013, the Bankruptcy Court dismissed SCIC's claims against the LAAC Parties in the relevant adversary proceeding. SCIC timely appealed that order to the District Court, which had jurisdiction to review the Bankruptcy Court's final order under 28 U.S.C. § 158(a)(1).

On March 17, 2014, the Bankruptcy Court issued an order in the contested matter lifting the automatic stay relating to the LAAC Parties' secured claims that were also implicated in the adversary proceeding. The Trustee appealed that order to the District Court under U.S.C. § 158(a)(1). SCIC's appeal and the Trustee's appeal were deemed related and assigned to a single judge.

During the course of those related appeals, the District Court, on June 20, 2014, issued an order imposing sanctions on the LAAC Parties' counsel, Jeffrey K. Garfinkle and Buchalter Nemer, A Professional Corporation (collectively the "Appellants"), in an amount to be determined by further proceedings. The District

1

Court entered orders fixing the amount of sanctions awarded to the Trustee and SCIC on August 6, 2014 and August 8, 2014, respectively, thereby finally concluding the discrete issue of the now appealed-from sanctions order.

On September 3, 2014, Appellants timely filed a notice of appeal. This Court has jurisdiction to review the District Court's final orders imposing sanctions on counsel under 28 U.S.C. § 158(d), which grants jurisdiction over appeals from "final orders" issued by a district court on review of final orders of a bankruptcy court under 28 U.S.C. § 158(a).

## STATEMENT OF ISSUES FOR REVIEW

1. Whether the District Court erred or abused its discretion in finding that Appellants had violated the court's stay orders by continuing a previously-noticed foreclosure sale, when the stay orders prohibited only "foreclosure," and did not specifically prohibit any steps in preparation for foreclosure.

2. Whether the District Court erred or abused its discretion in finding that Appellants had violated the court's orders staying foreclosure, willfully or otherwise, when no proscribed foreclosure ever took place.

3. Whether the District Court erred or abused its discretion in imposing sanctions under its inherent authority based on a legal standard omitting the "improper purpose" requirement, and without making a specific, and factually substantiated, finding of "improper purpose."

4.    Whether the District Court erred or abused its discretion in making its determination, requisite to the imposition of sanctions under its inherent powers or 28 U.S.C. § 1927 ("section 1927"), that Appellants had engaged in knowing or reckless conduct based on insufficient evidence and without allowing Appellants to present appropriate evidence.

5.    Whether the District Court erred or abused its discretion in finding that Appellants had knowingly or recklessly raised a frivolous argument sufficient to support the award of sanctions under section 1927.

6.    Whether the District Court erred or abused its discretion in finding that Appellants had "vexatiously and unreasonably multiplied proceedings" so as to warrant the imposition of sanctions under section 1927, when (a) the District Court never purported to find that the argument which actually lead to a "multiplication of proceedings" was made in bad faith; and (b) the District Court itself ordered Appellants to file a motion that the District Court later found vexatious and unreasonable.

7.    Whether the District Court erred or abused its discretion in sanctioning Appellants, in whole or in part, for "vexatiously and unreasonably multiplying proceedings" under section 1927 without first affording Appellants particularized notice or opportunity to be heard regarding that particular basis for sanctions.

3

8.      Whether the District Court erred or abused its discretion in sanctioning Appellants under its inherent powers without providing Appellants particularized notice or opportunity to be heard regarding that particular legal basis for sanctions.

## STATEMENT OF THE CASE

### I.     The Underlying Bankruptcy Proceedings and Appeals

Appellants are the attorneys for the LAAC Parties in certain chapter 11 cases and related adversary proceedings involving the bankruptcy estates of several debtors, including R2D2, LLC, Capitol Films Development, LLC, and ThinkFilm, LLC (the "Estates"). The Estates have been represented in these proceedings by Ronald Durkin in his capacity as chapter 11 trustee (the "Trustee"), or by Screen Capital International Corp. ("SCIC"). The bankruptcy cases and related adversary proceedings have been ongoing since 2010, during which time one of the assets in which LAAC has a secured interest—a "Film Library" consisting of temporary film distribution rights—has been rapidly depreciating in value. [ER83:19-84:6, 133:10-18; 333:16-18 .][1] While the Film Library is not itself a part of the Estates, it has been implicated in the bankruptcy proceedings by SCIC's claims that it was fraudulently transferred to a non-debtor, TFC, LLC ("TFC"). [ER429-430.]

---

[1] Citations to "ER" refer to Appellants' Excerpts of Record, filed concurrently herewith.

On July 22, 2013[2] and December 9, 2013, the Bankruptcy Court granted the LAAC Parties' respective motions to dismiss SCIC's complaint against them, including the causes of action for fraudulent conveyance and equitable subordination. [ER187, 184.] SCIC appealed both dismissals (Central District Case Nos. 2:13-cv-05537 and 2:13-cv-09493, referred to herein as "Case No. 5537" and "Case No. 9493", respectively). [ER1040, 1029.]

In light of the dismissal of SCIC's claims against LAAC, the Bankruptcy Court dissolved the preliminary injunction previously imposed to prevent LAAC from foreclosing on the Film Library. [ER1021.] The Bankruptcy Court denied SCIC's subsequent motion to stay the dissolution of this preliminary injunction pending its appeal of the dismissals to the Central District, which the District Court affirmed on March 21, 2014, citing SCIC's inability to substantiate its claims that the debtors held any interest in any of the films in the TFC Film Library—a showing requisite to SCIC's claims for fraudulent and preferential transfer. [ER1021, 1025, 1028.]

Noting that there was "nothing left" of SCIC's claims against LAAC, on March 17, 2014, the Bankruptcy Court further granted the LAAC Parties' motion to lift the automatic stay on foreclosure under 11 U.S.C. § 362, thereby permitting

---

[2] The Bankruptcy Court simultaneously dismissed the fraudulent transfer claims against the owner of the Film Library—TFC—which SCIC also appealed. [ER191, 1059.] On March 20, 2014, the District Court affirmed. [ER620.]

the LAAC Parties to foreclose on all of its secured claims at issue, whether

property of the Estates or, like the Film Library, of a non-debtor third party.

[ER181.] Accordingly, on March 27, 2014, Appellants noticed a foreclosure sale

of the Film Library scheduled for April 15, 2014. [ER762-771.]

Before the foreclosure could take place, however, the Trustee appealed the

order lifting the automatic stay (Central District Case No. 2:14-cv-02207, referred

to herein as "Case No. 2207") and moved the District Court for an emergency stay

pending appeal. [ER1012, 975.] The Trustee's appeal was deemed related to

SCIC's, and all three appeals—Case Nos. 9493, 5537, and 2207—were assigned to

the same District Court judge.

## II.   **The Stay Orders**

On March 28, 2014, without reference to the LAAC Parties' response to the

Trustee's emergency stay motion filed the same day, [ER845], the District Court

found that SCIC's appeals presented issues "inextricably intertwined" with the

assets on which the automatic stay had been lifted, and issued a *sua sponte* Order

Staying Foreclosure (the "March 28 Stay Order") in Case Nos. 5537 and 9493.

[ER180.] Relevant portions of that order read as follows:

> [I]n light of the Bankruptcy Court's March 17, 2014
> Order lifting the stay, this Court, on its own motion,
> STAYS any foreclosure on LAAC and Zelus' claims to
> the bankruptcy estates until it decides the equitable
> subordination issues presented in the pending SCIC
> appeals.

[*Id*.] The District Court denied the Trustee's stay motion in Case No. 2207 as moot given the March 28 Stay Order entered in these related cases. [ER179.]

On April 9 and April 10, 2014, SCIC and the Trustee each respectively filed an Emergency Motion for Clarification of the March 28 Stay Order on the basis that, on March 31, 2014, Appellants had given notice that LAAC would proceed to foreclose on the TFC Film Library at the previously noticed April 15 foreclosure sale notwithstanding the March 28 Stay Order. [ER797, 749, 578.] On behalf of LAAC, Appellants argued that the notice of foreclosure was appropriate and that the Emergency Motions were an improper attempt to expand, rather than clarify, the March 28 Stay Order, because the Film Library was not property of any of the "bankruptcy estates" (the express target of the March 28 Stay Order), but owned (subject to LAAC's liens) by TFC, a non-debtor third party.[3] [ER609, 777-778,

---

[3] Indeed, in recognition of the pre-petition transfer of the Film Library to TFC, the only claims SCIC had pursued against TFC were for fraudulent conveyance. However, the Bankruptcy Court had previously dismissed these fraudulent transfer claims *without leave to amend* and dissolved the associated stay on foreclosure, and the District Court likewise denied SCIC's subsequent request for a stay, pending appeal, on foreclosure of the Film Library, specifically. [ER1019.] While the Ninth Circuit has not decided the issue, the majority view is that assets subject to fraudulent transfer claims of an estate are not property of the estate under 11 U.S.C. § 541(a)(3) until recovered. *See, e.g.*, *Rajala v. Gardner*, 709 F.3d 1031, 1038-39 (10th Cir.), *cert. denied,* 134 S. Ct. 164 (2013); *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992); *Barclay v. Swiss Fin. Corp. (In re Midland Euro Exch.)*, 347 B.R. 708, 717-18 (Bankr. C.D. Cal. 2006); *contra Am. Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F. 2d 1266, 1275 (5th Cir. 1983).

792-794.] Thus, as LAAC pointed out, the District Court's March 28 Stay Order as to the LAAC Parties' "claims to the bankruptcy estates" –if strictly construed, as all stay orders must be—did not and was not intended to apply to the Film Library, which belonged not to the bankruptcy estates, but to TFC.[4] [*Id.*]

The District Court disagreed, and on April 11, 2014, issued an Order Reiterating Stay of Foreclosure in Case Nos. 9493 and 5537 (the "April 11 Stay Order"). [ER177.] Pertinent sections of that order read as follows:

> To review, the Court's March 28, 2014 Order **stayed any foreclosure** on the alleged secured claims of LAAC and Zelus, which are at issue in the pending appeals of *In re R2D2, LLC*, No. 13-cv-5537 PSG and *In re Capitol Films Development, LLC*, No. 13-cv-9493 PSG. The stay is to remain in effect until final resolution of the equitable subordination claims within these two appeals. . . .
>
> Although LAAC and Zelus claim that the March 28 Order applies only to assets "belonging to" or "owned by" LAAC and Zelus, Dkt # 33, at 2, 7, the Court reiterates that LAAC and Zelus **may not foreclose** on any of their alleged secured claims at issue in *In re R2D2, LLC*, No. 13-cv-5537 PSG **or** *In re Capitol Films*

---

[4] The Film Library includes six films out of 570 for which distribution rights may have belonged to one of the debtors (ThinkFilm), but at a hearing before the Bankruptcy Court just weeks earlier, the Trustee had stated repeatedly that LAAC "could have the rights to" these six films and that the court should lift the automatic stay as to those assets, which the Trustee deemed worthless. [ER612-614, 668:8-669:5; 702:9-17; 703:1-2; 706:2-5; 718:9-14.] Moreover, in its subsequent order affirming dismissal of SCIC's fraudulent transfer claims, the District Court itself held, not for the first time, that SCIC "fail[ed] to account for, much less describe the nature of each alleged interest" the debtors allegedly hold in any of the films within the Film Library. [ER152, 164.]

> *Development, LLC*, No. 13-cv-9493 PSG, **until final**
> **resolution of the equitable subordination claims**
> **within these appeals**.

[*Id.*] (emphases added).

Like the previous stay, the April 11 Stay Order only stayed "foreclosure" and did not explicitly prohibit foreclosure on assets related to *both* appeals pending resolution of *both* appeals. [*Id.*] Rather, the District Court "reiterate[d] that LAAC and Zelus **may not foreclose** on any of their alleged secured claims at issue in [Case No. 5537] **or** [Case No. 9493], until **final resolution of the equitable subordination claims within these appeals.**" [*Id.*] (emphases added). Viewing the bundles of collateral at issue in each of the appeals to be entirely separate, Appellants interpreted this ambiguous language in the April 11 Stay Order (which, along with the March 28 Stay Order, are collectively referred to as the "Stay Orders") to mean that the stay on foreclosure would last with respect to <u>each</u> bundle of collateral (as opposed to <u>both</u> bundles) only until resolution of the equitable subordination issue presented within its respective appeal. [ER573-577, 515-518, 529-530, 513-514; 144:16-23, 77:22-79:1, 79:25-80:9 .]

## III.    The OSC

On April 25, 2014, the District Court issued its final decision on SCIC's appeal as to LAAC (Case No. 5537), which counsel for the Trustee circulated to Appellants and counsel for SCIC by email. [ER152.] Specifically, the District Court affirmed the dismissal with prejudice of all of SCIC's claims against LAAC,

except for SCIC's claim for equitable subordination, which, previously dismissed on procedural grounds, was remanded to the Bankruptcy Court with instructions to rule on the merits of LAAC's motion. [*Id.*]

The same day, Appellants notified SCIC and the Trustee that LAAC's previously noticed foreclosure sale of the Film Library would be continued to May 6, 2014, based on their conviction that, by the April 25 order, the Stay Orders as to LAAC's secured claims had expired on their own terms and, for jurisdictional reasons, by operation of law. [ER573-574.] Counsel for SCIC argued in response only that the Stay Orders lasted until "final resolution" of the equitable subordination claim at issue, and that the District Court's order reversing and remanding dismissal of the equitable subordination claim against LAAC was not a "final resolution" because it did not address the merits of that claim—thereby implicitly agreeing with the central premise of Appellants' position, that the Stay Orders were severable as to the separate appeals and the separate bundles of collateral at issue therein. [ER576-577.] As Appellants pointed out in response, counsel for SCIC did not address Appellants' argument that jurisdiction over any remaining equitable subordination issues had returned to the Bankruptcy Court.[5]

---

[5] SCIC and the Trustee also failed to dispute that the District Court's order, even if it included a remand, was nonetheless a final resolution of all issues, including equitable subordination issues, contained "within the appeal." [*Id.*]

[*Id*.]  Appellants therefore invited SCIC to move the Bankruptcy Court for a stay pending that court's resolution of those issues on the merits.  [*Id*.]

Instead, on April 30, 2014, SCIC brought another emergency motion in Case No. 5537 seeking further clarification of the Stay Orders.  [ER560.]  Before the LAAC Parties could respond, however, the District Court issued an Order for Hearing on Emergency Motion/Order to Show Cause in Case Nos. 5537 and 9493 (the "OSC").  [ER151.]  The OSC required counsel for all parties to appear at a hearing on May 5, 2014 to discuss the most recent motions for clarification, and further required Appellants to "show cause why (1) sanctions in excess of $1,000 should not be imposed against them; and (2) they should not be held in contempt of court **for attempting to proceed with foreclosure."**  (emphasis added).  [*Id*.]

## IV.  Appellants' Arguments in Response to the OSC

On May 2, 2014, Appellants filed a brief in response to the Emergency Motions for Clarification and the District Court's OSC, in which Appellants argued that the Stay Orders had expired by their own terms, and for jurisdictional reasons, with respect to LAAC's secured claims at issue in the then concluded appellate proceeding in Case No. 5537.  [ER515.]  Nevertheless, Appellants offered to postpone LAAC's scheduled foreclosure sale on the Film Library for 30 days so that SCIC might obtain an expedited ruling from the Bankruptcy Court (to which the case had been remanded) on a motion for a new stay order.  [ER 517]

Pursuant to its consistent belief that LAAC's and Zelus' secured claims (and the stays thereto) have always been separate, Appellants also confirmed that unlike LAAC, "Zelus [was] not seeking to conduct a foreclosure at this time," but that "its foreclosure sale had been continued to June 6, 2014, at 11:00 am, and [would] be continued to future dates as necessary." [*Id.*][6]

Mr. Garfinkle repeated these arguments, and his good faith belief in them, at the May 5, 2014 hearing:

> MR. GARFINKLE: **Your Honor, all we are doing is continuing the foreclosure sale on the public record. It was published pre-stay order. All we are doing is continuing it**. . . . And I fully respect this Court's jurisdiction, its orders. We are trying to accommodate a very complex, multiparty—not even multiparty, hundreds of parties that are involved here that are communicating with me, what's happening to my contract? What's happening? Why can't I get my film back into the marketplace? And you know, to deal with these people on a minute-by-minute, hour-by-hour basis around the

---

[6] The same day, counsel for the Trustee sent Mr. Garfinkle an email asking whether the foreclosure sale set for May 6 would be postponed in light of the OSC. Consistent with his earlier communications with SCIC and the briefing just filed with the District Court, Garfinkle reiterated that "[LAAC] intends to proceed with the duly-noticed May 6, 2014 foreclosure sale on the ThinkFilm Loan against its recourse borrower, TFC Library LLC ("TFC"), and only against the assets owned by TFC and which serve as collateral for the ThinkFilm Loan. . . The foreclosure sale against TFC's assets will have no impact on the Debtors, their estates, their assets, or the just-remanded equitable subordination causes of action." [ER513-514.] Mr. Garfinkle also reiterated that "Zelus LLC ("Zelus") owns different loans. . . secured by different collateral to the collateral securing the ThinkFilm Loan. . . . The foreclosure sale on the collateral securing the loans owned by Zelus will be continued to June 6, 2014 at 11:00 am. Notice of this continuance will be provided and posted on the foreclosure website." [*Id.*]

> country, around the world saying we want to get these
> films and get them back in the marketplace, they've been
> dormant for the last four years, we are trying to find the
> best solution while respecting everyone's rights and
> complying with different laws and multiple appeals.
> **And I fully respect this Court's orders. I didn't mean
> to denigrate it. I truly believed…that this needed to
> go back to the bankruptcy court**… [ER142:9-143:18.]

Significantly, the District Court appeared to agree with Appellants'

assessment that, as of the District Court's April 25, 2014 order on Case No. 5537,

jurisdiction over the claims and collateral at issue in that appeal had returned to the

Bankruptcy Court:

> THE COURT: **I don't disagree as it relates to what's
> been mandated—I think you are half right. I think
> you are absolutely right. As to the appeal that's done
> 5537, it's now back in Judge Russell's hands** as to
> what he wants to do with the equitable subordination and
> whether he wants to –when he has all the cases back, let
> the foreclosure go forward.

[ER143:19-24.] (emphasis added). However, the court expressed doubt that the

scheduled foreclosure sale did not involve any of the separate assets claimed by

Zelus, and to which the District Court maintained jurisdiction. [ER143:25-7:3.]

The District Court also noted that, "in [its own] view," the plural use of "appeals"

in its Stay Orders signified that the stay applied to both LAAC and Zelus pending

resolution of *both* appeals, rather than *each* appeal:

> THE COURT: I don't think it's a fair reading though,
> and you may ultimately at the end of the day be right.
> But I don't think it would necessarily be the most prudent

thing when an order is pretty clear. It says "any foreclosure" and then uses the word "appeals" with an "S" as opposed to an appeal. So, you know—

MR. GARFINKLE: And for that, Your Honor, I have to sincerely apologize. I view these—because the loans were separate, the collateral is separate, Judge Russell severed them in a way he decided them in June of 2013. I'm not dealing with Zelus. That's a different loan, different parties…And I understand, Your Honor; and I truly believed that, given how Judge Russell severed these matters and how they are completely separate loans with different collateral…I interpreted it—and I apologize if I misinterpreted this Court's order—that the stay against Zelus is in effect until the Zelus appeal gets ruled on. It didn't even dawn on me because these loans are totally different. [ER144:10-20; 145:16-146:1.]

While the District Court doubted the "prudence" of assuming the Stay

Orders did not apply to LAAC pending both appeals, [ER145:10-15], the District

Court recognized at least some merit in the substance of Appellants' argument and

accordingly ordered Appellants to present that argument in a separate motion to

separate the stay orders:

THE COURT: Why don't we do this. . . I think what you need to do then is, to tee it up correctly, then is to, along with this ex parte, tee up a motion asking me to remove the stay as it relates to 9493[7] for the various reasons you are telling me. **It may make total sense.** But in my view, when I issued the order in both cases, was to maintain the status quo until we could get it resolved. **And so, in my view, it wasn't totally resolved. The stay order as it relates to Zelus, you may be correct, I**

---

[7] The District Court appears to have inadvertently referred to Case No. 9493 and Zelus instead of Case No. 5537 and LAAC.

> **shouldn't preclude the foreclosure going forward.
> But I think you need to address the fact that the order
> said 'appeals' in the plural**.
>
> MR. GARFINKLE: And for that, Your Honor, all I can
> offer is my sincerest apologies in not understanding that
> in the context of what I thought were—we all agreed
> upon that these loans were understood.   These loans
> were completely severed.

[ER146:11-147:3.]  (emphases added).

On behalf of LAAC, Appellants filed their court-ordered Motion for Order

Separating Stay Pending Appeal on May 7, 2014 (the "Separation Motion").

[ER331-378.]  SCIC opposed, and the Trustee, recognizing that the Separation

Motion sought relief for LAAC to foreclose on the same assets at issue in the

Trustee's own appeal of the Lift Stay Motion, brought his own Emergency Motion

for Stay Pending Appeal in Case No. 2207.  [ER290, 474.].  The District Court

held an additional hearing on these motions on May 27, 2014.  [ER35.]

At the hearing, however, the District Court returned its focus sharply to the

issue of sanctions.[8]  On this topic, the Appellants argued, among other things, that

sanctions would not be appropriate since they had not actually foreclosed on any

assets in violation of the court's orders.  [ER71: 1-4.]  The District Court

---

[8] Chastising Appellants for their surprise, the District Court stated in the June 20
Order that "the *only* issue that warranted a hearing [on May 27] was whether Mr.
Garfinkle should be sanctioned; the Court had already decided the LAAC Parties'
motion to separate and the Trustee's emergency motion for stay pending appeal on
the papers."  [ER15.]  In fact, the court did not issue any ruling on these motions
until partway through the May 27 hearing, itself.  [ER39:6-14.]

acknowledged that no foreclosure sale had taken place, but nevertheless disagreed as to whether Appellants' conduct violated the order for purposes of imposing sanctions:

> THE COURT: So what you are saying is I haven't violated the Court order because we never foreclosed. Except you moved forward that direction so that everybody has to stop because you won't stop yourself. You then say in your April 4th e-mail, 'your request for reconsideration is duly considered and rejected.' So what does that lead everybody to believe? That you are going to violate, if you haven't already violated the Court order. [ER71:17-24.]

Raising the subject of its inherent powers for the first time, the District Court also declined Mr. Garfinkle's multiple offers to take the stand and testify under oath as to the good faith reasoning behind all of his communications with opposing counsel regarding the Stay Orders:

> MR. GARFINKLE: Your Honor, I believe that me and my firm acted in the utmost good faith. **I can walk through in terms of an evidentiary hearing, if the Court wants to have one, where I am represented by counsel and with proper consideration of the questioning under oath so that the Court can assess my good-faith belief in understanding and applying the Court's orders against this backdrop. I would request the permission to have that hearing.** This is a very significant matter, a very important matter. . . . [ER72:14-22.]

> THE COURT: …I know what you are going to say is you stated in your legal reasons of separation. That's your basis for good faith. I'm telling you I don't buy it.

MR. GARFINKLE:  And I appreciate where the Court is coming from.  I would only add to that that, if you look at all the e-mails that took place during that time period, no one, neither the trustee nor SCIC, identified that to be an issue, that, look, you can't foreclose because the Zelus appeal is still pending.  **Because that issue never even dawned on me or apparently my opposing counsels, two very highly respected—they never even saw that problem in how the Court had written its orders.**  And for that, I have to just fall on my sword.  I just didn't see it that way.  Again, part of it may be my four-year history of understanding these loans, the long, long litigation that's taken place in front of the Bankruptcy Court.  [ER74:1-16.]

…

MR. GARFINKLE:  But getting back to where we are today, Your Honor, I understand the Court is going to deny the separation motion.  That's fine. . . . But as to the OSC re contempt, I would request the opportunity to have my counsel present given what the Court's comments were about the sanctions it's considering—

THE COURT: **How about if we just say separate and apart from contempt, my inherent powers to award sanctions for violating my orders**.  Separate and apart from civil contempt.

MR. GARFINKLE: Your Honor, I would argue that that is uncalled for here because of the good faith belief.  And again, Your Honor, I point out, if you look at the e-mail exchange that took place—and the Court's pointed them out—the grounds that were given for why the foreclosure was to be stopped, no one on the other side of the table ever mentioned the connection in the orders between the two separately litigated appeals.  And because of that, I never even gave it a moment's thought, never, until this Court pointed that out at the May 5th hearing. . . And that's why we filed the separation motion to point out how the documents are structured and how the loans are

structured and how they were litigated in the Bankruptcy Court to explain what my good faith belief of the separateness of these appeals, these loans, these parties, and certainly how he handled it in the Bankruptcy Court. [ER77:12-78:14.]

. . .

MR. GARFINKLE: So again going back to why we are here, Your Honor—I appreciate the Court is going to deny my stay of separation motion, **but I do not believe sanctions are appropriate. I think I acted in the utmost good faith. And if the Court wants sworn testimony, I'd like to have my counsel present so I can confirm everything that happen[ed]**.

THE COURT: All right. Thank you. [87:4-14.]

Citing insufficient evidence that the collateral underlying LAAC's and Zelus's separate loans is indeed entirely separate, the court orally denied the Separation Motion and issued an order the next day memorializing that decision. [ER20.][9]

## V.     <u>Order Sanctioning Appellants</u>

Without conducting any further hearing after the May 27 proceeding, the District Court separately adjudicated the issue of sanctions in an order entered in all three appeals on June 20, 2014 (the "June 20 Order"). [ER5.] In that order, the District Court opined that throughout the bankruptcy proceedings, the LAAC

---

[9] In its order, the District Court also amended the Stay Orders as follows: "Accordingly, the Court STAYS any foreclosure on LAAC **and** Zelus's alleged claims to the bankruptcy estates until final resolution of **both** In re Capitol Films Development, LLC, No. 13-cv-9493 PSG and In re R2D2, LLC, No. 14-cv-2207 PSG." [ER34. ] (emphases in original).

Parties had always been "eager to foreclose" on the Film Library, and summarized the circumstances giving rise to the OSC as follows:

- "Despite the Court's clear Order Staying Foreclosure, Mr. Garfinkle *refused to provide assurances* to the Trustee Parties that the LAAC Parties would not proceed with a previously noticed foreclosure sale set for April 15, 2014."

- Later, "despite the Trustee Parties' requests that LAAC adhere to the Court's clear Order Staying Foreclosure and Order Reiterating Stay of Foreclosure . . ., LAAC *intended to 'proceed with its foreclosure sale* against TFC Library LLC on May 6, 2014, as duly noticed. As a result, SCIC was forced to file yet another emergency motion for clarification to prevent the LAAC Parties from proceeding with their rescheduled foreclosure sale."

[ER11, 13] (emphases added).

Discussing the applicable legal standard, the District Court emphasized its inherent power to sanction for "willful disobedience of a court order" or for conduct "tantamount to bad faith." [ER12.] It stated that, under this standard, "a party acts in bad faith when it knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." [*Id.*] And, *for the first time throughout these proceedings*, the District Court also cited its authority to sanction under 28 U.S.C. § 1927 for "unreasonably and vexatiously multipl[ying] the proceedings." [*Id.*]

Ultimately, the District Court, while never finding Appellants in contempt— the only subject raised in the OSC—found that Appellants' conduct was sanctionable under both its inherent powers and section 1927:

Based on the facts above, the Court finds that attorneys' fees should be assessed against Mr. Garfinkle for **(1) his willful disobedience of the Court's Stay Orders, and (2) his attempt to justify this violation of the Stay Orders by knowingly presenting a frivolous argument which contradicts the plain language of the Order**.

The language of the Court's Order Staying Foreclosure was clear: LAAC **and** Zelus were prohibited from foreclosing on any of their alleged secured claims until the Court decided the equitable subordination issues in two appeals expressly listed in the Order, *In re R2D2, LLC*, 13-cv-5537 PSG and *In re Capitol Films Development, LLC*, 13-cv-9493 PSG. *In re R2D2*, 13-cv-5537 PSG, Dkt. # 31. In the Order Reiterating Stay of Foreclosure Pending Appeal, the Court further emphasized that "[t]he stay is to remain in effect until final resolution of the equitable subordination claims within these two appeals." *In re R2D2*, 13-cv-5537 PSG, Dkt. # 34 (emphasis added). **The Court's orders could not have been any more clear, and Mr. Garfinkle willfully disobeyed the orders in moving to foreclose on LAAC's alleged secured claims**. *See Chambers*, 501 U.S. at 45 ("[A] court may assess attorney's fees as a sanction for the willful disobedience of a court order.").

**In a further misstep, Mr. Garfinkle knowingly presented a frivolous argument in attempt to justify his violation of the Stay Orders.** Mr. Garfinkle has been practicing law in the State of California for over twenty years and is a partner at an established law firm. Based on these credentials alone, Mr. Garfinkle should have known the parameters of the Court's Stay Orders, and that his acts were in clear violation. Yet, Mr. Garfinkle has already been held in contempt and sanctioned by the Bankruptcy Court for almost this same

strained reading of an injunction,[10] and he was warned numerous times by the Trustee Parties that his actions were in violation of the Stay Orders. Based on the foregoing, it is implausible that Mr. Garfinkle "never even gave it a moment's thought" that the Stay Orders applied to both LAAC and Zelus until final resolution of the equitable subordination claims in both In re R2D2, LLC, No. 13-cv-5537 PSG and In re Capitol Films Development, LLC, No. 13-cv-9493 PSG. In re CFD, 13-cv-9493 PSG, Dkt. #43, at 44:5-6. To the contrary, Mr. Garfinkle **willfully violated the Court's Stay Orders**, **then knowingly asserted a completely frivolous argument regarding the scope of the Stay Orders, in hopes that this Court would give him a pass for his "innocent" violation.** However, as the Court stated previously, "gamesmanship and feigning ignorance are not excuses to violate an Order of this Court[,]" *In re R2D2*, 13-cv-5537 PSG, Dkt. # 34, and Mr. Garfinkle's frivolous arguments were clearly in bad faith.

[ER16-17.] (emphases added). Thus, the District Court justified the imposition of sanctions under its inherent powers with its summary "findings" that (1) the Stay Orders "could not have been any more clear"; (2) Mr. Garfinkle, as a seasoned attorney, "should have known" the District Court's intended meaning of the Stay Orders; (3) Mr. Garfinkle nevertheless "knowingly" violated the Stay Orders by

---

[10] The District Court referred to an order issued by the Bankruptcy Court holding Appellants in simple contempt for their inadvertent violation of an entirely different stay order based on Appellants' apparent misreading of entirely different language. The District Court neglected to mention the Bankruptcy Court's explicit determination that the earlier violation was unintentional, and in any event does not explain how the orders were similar enough to support an inference that Appellant's subsequent misreading of an entirely different order was intentional. [Request for Judicial Notice ("RJN"), Ex. A at 30:18-21.]

"intending to proceed" with a previously noticed foreclosure sale; and (4) Mr. Garfinkle's explanation for his interpretation of the Stay Orders was "frivolous" and "clearly in bad faith." [*Id.*]

In determining the amount of sanctions, the District Court deemed it appropriate to compensate SCIC and the Trustee for their attorneys' fees incurred in relation to the following motions and hearings thereon, which "would not have been before the Court" but for "Mr. Garfinkle's willful violation of the Stay Orders and his bad faith attempt to justify this violation":

- SCIC's two emergency motions for clarification;
- The Trustee's emergency motion for stay pending appeal;
- The LAAC Parties' motion for order separating stay pending appeal;
- The May 5 hearing; and
- The May 27 hearing.

Accordingly, the court ordered SCIC and the Trustee to file motions demonstrating their relevant attorneys' fees and set a briefing schedule for Appellants to oppose. [ER17-18.]

In lieu of further motion practice, Appellants entered into separate stipulations with SCIC and the Trustee as to the total amount of fees payable to each, but preserving Appellants' rights to appeal the basis for sanctions. [ER269, 279.] The District Court entered final sanctions awards pursuant to these

stipulations on August 8, 2014 (the "August 8 Order"), and August 6, 2014 (the "August 6 Order") in Case Nos. 9493 and 2207, respectively. [ER3, 1.]

## VI. **The Present Appeal**

On September 3, 2014, Appellants timely appealed the August 6 and August 8 Orders, as well as the June 20 Order underlying them in each of the three cases in which it was entered. [ER195, 219, 245.] The appeals are numbered as follows:

| District Court Case No. | Ninth Circuit Appeal No. |
|---|---|
| 2207 | 14-56431 |
| 5537 | 14-56451 |
| 9493 | 14-56452 |

Appellants' motion to consolidate, filed in all three appeals on November 17, 2014, is currently pending. [RJN, Exs. B-D.]

Briefing in Appeal Nos. 14-56451 and 14-56452 has been suspended pending the Court's ruling on certain jurisdictional issues raised by separately issued Orders to Show Cause.[11] Appellants file this Opening Brief in Appeal No. 14-56431, in which no Orders to Show Cause have been issued, and will file the same in the identical appeals if and when that becomes appropriate.

---

[11] Though the appeals are substantively identical, the Court has issued Orders to Show Cause why Appeal No. 14-56451 should not be dismissed as untimely and why Appeal No. 14-56452 should not be dismissed as premature. [RJN, Exs. E and F.]

## SUMMARY OF ARGUMENT

The District Court's June 20 Order sanctioning Appellants under both its inherent powers and section 1927 was an abuse of discretion and requires reversal for four independent reasons.

First, the court erred in imposing sanctions premised on an alleged violation of court orders staying only "foreclosure" when the court itself acknowledged that *no foreclosure had ever actually taken place*. Under well-settled law, Appellants' continuance of a foreclosure sale noticed before the operative Stay Orders did not constitute a prohibited "foreclosure" or otherwise violate the plain language of the orders, which must be construed strictly. Thus, the "violation" on which the sanctions were primarily based did not actually occur, in bad faith or otherwise.

Second, the District Court did not make, and the evidence did not support, any finding that Appellants engaged in any conduct tantamount to bad faith, as required for the imposition of sanctions under either its inherent powers or section 1927. Significantly, the District Court purported to find bad faith based on an erroneous legal standard that omitted the requisite factual determination that Appellants acted with an "improper purpose"—a determination not supported by the evidence in this case.

The District Court's only finding related to the issue of bad faith was its conclusion that Appellants, after knowingly violating the Stay Orders, had

purposely concocted a "frivolous" argument to justify that violation after the fact. However, Appellants could not have knowingly violated the Stay Orders when there was no violation, and their necessarily reasonable arguments on that point cannot be sanctionable. Moreover, Appellants' other purportedly sanctionable arguments made in response to the court's Order to Show Cause, and in further briefing *expressly ordered by the District Court*, were founded on well-established case law and consistent with an interpretation of the Stay Orders on which both Appellants and their opposing counsel had agreed. Thus, even if Appellants interpreted the court's Stay Orders in a manner that the District Court did not intend, the evidence at most supports an inference of inadvertence—a state of mind which cannot support the issuance of sanctions.

Third, the court erred in levying sanctions under section 1927—which addresses bad faith conduct that unreasonably multiplies the proceedings—because the arguments that the District Court erroneously deemed to have been made in bad faith were, in any event, not the source of any multiplication of proceedings.

Finally, even if the District Court did not abuse its discretion for any of the reasons discussed above, it still committed error, independently compelling reversal of the sanctions imposed under section 1927 and its inherent powers, by failing to provide Appellants with the advance, particularized notice of the bases for such sanctions that due process requires.

## ARGUMENT

### I.     Standard of Review

Sanctions awarded under 28 U.S.C. § 1927 and the court's inherent powers are generally reviewed for abuse of discretion.  *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1526 (9th Cir. 1990); *In re Deville*, 361 F.3d 539, 547 (9th Cir. 2004).  Under this standard, the district court has abused its discretion "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).  However, "when the district court is accuser, fact finder and sentencing judge all in one," as was the case here, this Court's review is "more exacting" than under the ordinary abuse of discretion standard: the Court "must be careful to ensure that any decision to impose sanctions [was] made with restraint and discretion."  *In re Peters*, 642 F.3d 381, 384 (2d Cir. 2011); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").

### II.    The District Court Clearly Erred In Imposing Sanctions Under Its Inherent Powers

Orders awarding attorney fees under the court's inherent powers are valid only when there is a showing of "bad faith actions or willful disobedience of a court order."  *Zambrano v. City of Tustin*, 885 F.2d 1473, 1481 (9th Cir. 1989).[12]

---

[12] In this context, violation of a court order is "willful" when done in bad faith— i.e., knowingly or recklessly, as described below.  *In re Dyer*, 322 F.3d 1178, 1196

Here, the District Court purported to award sanctions under its inherent powers for both "willfully violating a court order" and engaging in conduct "tantamount to bad faith." As shown below, Appellants did neither. As a threshold matter, the District Court's determination that Appellants had actually violated the Stay Orders was based on a clearly erroneous view of the law and the facts. Moreover, the District Court's further determination that Appellants acted in bad faith by attempting to "justify" a purported violation (that never took place) was based not only on an erroneous legal standard, but also a clearly erroneous assessment of the evidence.

A.  <u>Appellants' Actions Did Not Amount to a Violation of the Stay Orders, Much Less Willful Disobedience of Those Orders</u>

Imposing sanctions for willful disobedience of a court order obviously requires finding an actual violation of that order. *Miller v. City of Los Angeles*, 661 F.3d 1024, 1024 (9th Cir. 2011). In determining what constitutes a violation

---

(9th Cir. 2003) (while "specific intent" to violate a stay is not needed for contempt, such specific intent or bad faith is necessary to impose sanctions under the court's inherent power). Thus, whether premised on violation of a court order or some other conduct, sanctions cannot be imposed under a court's inherent powers without an explicit finding of bad faith. *Id.*; *Zambrano*, 885 F.2d at 1478 ("To insure that restraint is properly exercised, we have routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent power."); *Yagman*, 987 F.2d at 628 (in sanctioning counsel, "[c]ourts may not invoke inherent powers without a specific finding of bad faith."); *Miller v. City of Los Angeles*, 661 F. 3d 1024, 1026 (9th Cir. 2011) (even where attorney conceded he violated a court order, he never conceded that his conduct "'constituted or was tantamount to bad faith,' as it had to have been in order to be sanctionable under the court's inherent power.").

of a stay order, such orders, like all injunctions, are to be strictly construed. *U.S. v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985) (injunctions need be obeyed only to the extent that prohibited conduct is reasonably specified); *Miller*, 661 F.3d at 1028 ("Orders can constrain conduct only to the extent their words give clear notice of what is to be prohibited."). Indeed, given the "strong policy of clarity" behind Federal Rule of Civil Procedure 65(d) (the fundamental source of a court's injunctive power),[13] "all ambiguities or inconsistencies are resolved in favor of the person subject to the injunction," *Holtzman*, 762 F.2d at 726, and an injunction that does not clearly describe prohibited conduct is not enforceable by contempt. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1132 (9th Cir. 2006).

By their plain language, the District Court's Stay Orders prohibited the LAAC Parties only from "foreclosing." [ER180, 177.] The June 20 Order completely fails to analyze the well established meaning of "foreclosing," leading to its erroneous conclusion that there was a violation of the Stay Orders. "Foreclosure . . . in the natural and common usage of words means a termination of all rights of the [debtor] or his grantee in the property covered by the loan." *U.S. Bank Nat'l Assoc. v. Schumacher*, 467 Mass. 421, 430 (2014) (quoting *Levin v.*

---

[13] The specificity provisions of Rule 65(d) apply not only to permanent and preliminary injunctions sought by a party, but to all "equitable decree[s] compelling obedience under the threat of contempt," including the District Court's *sua sponte* Stay Orders. *See Int'l Longshoremen's Ass'n, Local 1291 v. Phil. Marine Trade Ass'n*, 389 U.S. 64, 75 (1967).

*Century Indem. Co*., 279 Mass. 256, 259 (1932)).  In other words, "[f]oreclosure

denotes, *not the beginning, but the end, of a procedure* adopted by the [creditor]

to bar perpetually the rights of the [debtor], and *includes the sale itself of the*

*[collateral], rather than the steps preliminary to the sale."*  *Ex parte GMAC*

*Mortgage, LLC*, 2013 WL 4873071 at *4 (Ala. Sept. 13, 2013) (quoting 59 C.J.S.

Mortgages § 639 (2009)).  *See also Brewster v. Sun Trust Mortgage, Inc.*, 742 F.3d

876, 879 (9th Cir. 2014) (drawing a distinction between "foreclosure" (which

means final sale) and "foreclosure proceedings" (which means steps leading to that

sale)).

Thus, strictly construed (as they must be), the Stay Orders prohibiting

foreclosure did not expressly or even impliedly prohibit the LAAC Parties from

continuing a previously noticed foreclosure sale, from taking any act in furtherance

of a planned foreclosure, and certainly not from "intending to foreclose."  [ER13.]

Even if the District Court subjectively believed that "foreclosure" includes all steps

preliminary to the sale, the Stay Orders did not objectively express that subjective

intention in a manner sufficient to satisfy Rule 65(d), or to give rise to sanctions.[14]

---

[14] By comparison, the Bankruptcy Court's previous injunction regarding
foreclosure on the Film Library, which the District Court even quoted in the June
20 Order, was explicit in prohibiting not only foreclosure, but filing or recording
any notices thereof: "[D]efendant LAAC, including its officers, members, agents,
employees, representatives, and all persons acting in concert or participating with
them are enjoined and restrained from engaging in, performing, effectuating or
otherwise carrying out a foreclosure of or on the TFC [Film] Library, **including**

*See Miller*, 661 F.3d at 1028; *Reno Air*, 452 F.3d at 1132 (reversing contempt sanctions for abuse of discretion where TRO failed to describe the purportedly prohibited conduct with specificity).

Moreover, that merely harboring or even expressing an intention to foreclose cannot be deemed a violation of an order staying only "foreclosure" is a matter of well-established doctrine in the bankruptcy context from which this appeal arises. The Ninth Circuit has consistently held that merely continuing a foreclosure sale noticed before the 11 U.S.C. § 362 automatic stay (which, it should be noted, is a far broader injunction than the Stay Orders at issue here) does not violate the stay. *See*, *e.g*., *In re Roach*, 660 F.2d 1316, 1318-19 (9th Cir. 1981); *In re Peters*, 101 F.3d 618, 620 (9th Cir. 1996); *In re Derringer*, 375 B.R. 903, 909 (10th Cir. 2007) (key question is whether the actions taken operated to postpone a foreclosure sale which was previously pending or whether they initiated a new sale). *See also In re Atlas Mach. & Iron works, Inc*., 239 B.R. 322, 330 (E.D. Va. 1998) (mailing letters to third parties that had expressed interest in purchasing deed of trust property subject to stay to notify them that foreclosure sale had been continued served merely to preserve status quo and did not violate automatic stay).

---

but not limited to serving, filing and/or recording any notices or other documentation in connection with a proposed foreclosure** of or on the TFC [Film] Library." [ER7, ¶ 3] (emphasis added).

In this case, neither Appellants nor their clients conducted any foreclosure after issuance of the Stay Orders. On behalf of LAAC, Appellants issued notice of a foreclosure sale on the Film Library on March 27, 2014, before either Stay Order was entered. [ER762-771.] That sale never took place. Rather, after the Stay Orders were issued, Appellants merely continued the foreclosure sale to May 6, 2014, as permitted under *Roach* and subsequent cases. On April 25, 2014, after the District Court issued its final decision on SCIC's appeal against LAAC, Mr. Garfinkle notified counsel for SCIC and the Trustee of his understanding that the Stay Orders were no longer in effect as to the collateral at issue in that particular appeal (Case No. 5537), and that LAAC, accordingly, intended for the sale, previously continued to May 6, 2014, to go forward as scheduled. [ER573-574.] Yet, as even the District Court recognized, the foreclosure sale did not go forward on May 6, or ever. [ER71:17-24.] Certainly, Appellants took no action to effectuate a sale that would perpetually bar the rights of any debtor to the Film Library or any other collateral (i.e., conduct a "foreclosure"), and there was no finding or evidence to the contrary.

Given the established meaning of the term "foreclosure" and the required strict construction of the Stay Orders, Appellants' conduct did not violate the letter, or even the spirit, of the Stay Orders. Accordingly, Appellants committed no "disobedience," willful or otherwise, that could support the issuance of sanctions

under the court's inherent powers.[15]  To the extent the June 20 Order was premised on such purported disobedience, it was clearly erroneous as a matter of law and fact and therefore must be reversed.

> **B.** **To the Extent Sanctions Were Alternatively Imposed Under the Court's Inherent Powers for Appellants' Purportedly Bad Faith Justification of Their Actions, the District Court Abused Its Discretion In Finding Bad Faith**

It is well established that "[a] court must exercise its inherent powers with restraint and discretion, and must make a specific finding of bad faith before sanctioning under its inherent powers." *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993).  In this context, bad faith is demonstrated by "an attorney's reckless misstatements of law and fact, *when coupled with an improper purpose*, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case." *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) (emphasis added).  Further, these elements "must be supported by a high degree of specificity in the factual findings." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009); *Barnd v. City of Tacoma,* 664 F.2d 1339, 1343 (9th Cir.1982) (remanding to the district court to either withdraw sanctions or enter specific findings of fact establishing that defense counsel acted

---

[15] Obviously, Appellants could not have disobeyed the Stay Orders in bad faith if they did not, in fact, violate the orders.  *See Miller*, 661 F.3d 1024 ("You can't have chicken parmesan without chicken; you can't have an amazing technicolor dreamcoat without a coat; you can't have ham and eggs if you're short of ham or eggs.  And you can't have a bad faith violation without a violation.").

in bad faith); *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (same).

### 1. The Court Applied The Incorrect Legal Standard and Failed to Make Any Finding That Appellants Acted with an "Improper Purpose"

Significantly, the District Court stated in its June 20 Order that "a party acts in bad faith [for purposes of inherent powers sanctions] when it 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" [ER16, ¶1.]  However, this is the standard for imposing sanctions under 28 U.S.C. § 1927, as opposed to the court's inherent powers, the latter of which must be exercised with considerably more restraint. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (because inherent powers are not tethered to any statute and are therefore "shielded from direct democratic controls, they must be exercised with [particular] restraint and discretion").

As the Ninth Circuit more recently clarified in *Fink* based upon detailed review of the case law, even reckless misstatements of law are not sanctionable unless also coupled with an improper purpose.  *See Fink*, 239 F. 3d at 993 ("Recklessness, without more, does not justify sanctions under the court's inherent powers.").  While the District Court's error of law, alone, justifies reversal (*see In re Keegan*, 78 F.3d 431, 436 (9th Cir. 1996), the District Court then compounded its error by purporting to find bad faith without making any finding or citing any

33

evidence—let alone "highly specific" evidence—to the effect that Appellants acted with an improper purpose, as required.

Rather, the District Court's June 20 Order makes only a single reference to Garfinkle's alleged "purpose": "Mr. Garfinkle willfully violated the Court's Stay Orders, then knowingly asserted a completely frivolous argument regarding the scope of the Stay Orders, **in hopes that this Court would give him a pass for his 'innocent' violation."** [ER17, ¶ 2.](emphasis added.) The District Court cited no specific evidence for this particular proposition, and certainly responding with exculpatory arguments to a court's concerns in an Order to Show Cause cannot in itself constitute evidence of "improper purpose." Otherwise, every attorney responding to an Order to Show Cause would be faced with the Catch-22 of providing no response at all or providing a response that, if not found meritorious, would establish an "improper purpose" justifying the issuance of sanctions. That the District Court based an award of sanctions on such a summary, and untenable, finding of "improper purpose," without reference to any of the evidence of good faith either submitted or offered, was an abuse of discretion, wholly apart from the fact that the "violation" of the Stay Orders upon which the June 20 Order was premised never actually occurred.

### 2. The Court Also Based its Finding That Appellants Acted "Knowingly" or "Recklessly" on Insufficient Evidence

Even assuming Appellants acted with the requisite "improper purpose" and further assuming *arguendo* that Appellants "misstated the law" when they explained why they did not believe they had violated the Stay Orders (which, as discussed herein, they did not), there was nevertheless insufficient evidence before the District Court to support its exercise of discretion that Appellants did so either knowingly or recklessly. In fact, the District Court made no reasonable attempt to discern Mr. Garfinkle's state of mind and even refused his multiple offers to testify under oath, in contravention of well settled due process requirements. [ER72:14-22, 87:4-14.] *See Toombs v. Leone*, 777 F.2d 465, 472 (9th Cir. 1985) (due process requires that parties subject to sanctions have sufficient opportunity to demonstrate that their conduct was not undertaken recklessly or willfully). Instead, the District Court merely assumed Mr. Garfinkle acted with a culpable state of mind simply because it found that his position was "implausible." [ER17, ¶ 2.] This was error.

As the Ninth Circuit has often stated, evidence in the record consistent with mere ignorance or negligence does not support a finding of recklessness sufficient to support sanctions under either the court's inherent powers or, for that matter, section 1927. *See Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998); *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991) ("[O]bservations…as

consistent with negligence as with bad faith" are insufficient to impose sanctions).

Accordingly, the threshold amount of evidence needed to find knowing or reckless

misconduct is high, a threshold never even approached in this case.

In *Primus Automotive Financial Servs., Inc. v. Batarse*, 115 F.3d 644, 648

(9th Cir. 1997), for example, the Ninth Circuit reviewed sanctions imposed upon

an attorney and his client after a litany of missteps. First, the sanctionees violated

a stipulated order by selling certain collateral and withholding the proceeds. The

accused attorney finally issued opposing counsel a $97,000 check for the proceeds

when confronted with a motion for contempt—but the check bounced. The parties

then reached a settlement regarding contempt proceedings, but the sanctionees

subsequently sought additional settlement provisions and objected to routine

stipulations. At the hearing on yet another contempt motion, the sanctioned

attorney acknowledged writing a bad check, but made a meritless argument that he

had been forced to do so during a "void proceeding." Nevertheless, the Ninth

Circuit reversed sanctions as unwarranted:

> The bad faith requirement sets a high threshold, and the
> district court's conclusions here fall short of the requisite
> finding. The court called the arguments in opposition to
> enforcing the settlement agreement "totally frivolous,"
> identified the overdraft and [the attorney's] attempt to
> explain it as "outrageous" and "inexcusable," and stated
> that it was "appalled" [by the sanctioned attorney's
> conduct]. Although we appreciate the frustration the
> court felt, we cannot glean from the record whether this
> outrage stemmed from a [justified] belief that [the

> attorney] acted in bad faith…[The attorney's] argument
> clearly lack[ed] merit, but forceful and effective
> representation often will call for innovative arguments.

*Id*. at 649.  *See also Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1005 (9th Cir.

1987) (where attorney asserted certain "testimony" supported statements in his

briefs even though the record contained only narrative descriptions of testimony he

thought he could procure, the court "deplore[d] this inaccuracy" and decried it as

conduct "unworthy of a careful attorney," yet, without any evidence other than the

conduct itself, was not persuaded that the accused had acted in bad faith).

By comparison, the Ninth Circuit affirmed inherent powers and section 1927

sanctions in *Lahiri v. Universal Music and Video Dist. Corp.*, 606 F.3d 1216, 1221

(9th Cir. 2010), where the lower court based its findings of recklessness and bad

faith on evidence that plaintiff's counsel had (1) asserted a contrived, 21-year-old

copyright claim without even inquiring whether plaintiff had composed the work in

question as a work for hire (he had), and only after the plaintiff's trademark claims

were placed into jeopardy by recent case law; (2) repeatedly and blatantly

misquoted applicable Indian case law to the court in a manner designed to mislead;

and (3) after years of litigation, attempted to force the judge's recusal by retaining

the judge's former law firm to defend him against the sanctions motion.  *Id*.  The

collective import of these cases is clear: to determine that an attorney's conduct

was undertaken recklessly or willfully simply by the nature of the conduct, itself,

as the District Court did here, the offensive conduct must be considerably more pernicious than anything present in the record below. Otherwise, the court risks chilling the sort of innovative argument that "forceful and effective representation" often requires. *See Primus Auto.*, 115 F.3d at 648.

Here, the District Court cited no specific evidence actually suggesting that Appellants knowingly or recklessly misread the Stay Orders, but rested this determination *solely* on its opinion that Mr. Garfinkle's interpretation of the Stay Orders was "implausible" given the purported clarity of the orders and Mr. Garfinkle's experience as an attorney,[16] [ER17, ¶ 2], without reference to any of

---

[16] The District Court noted that Mr. Garfinkle's experience with the courts included sanctions previously issued by the Bankruptcy Court for "almost this strained reading of an injunction." The District Court's reference to and apparent reliance on an earlier difference in the interpretation of a different order should not have been a basis for finding sanctionable conduct in this case. The sanctions to which the court referred were imposed on Buchalter Nemer, and not Mr. Garfinkle personally, in connection with a finding of *civil contempt* for allegedly violating an entirely different stay order based on an apparent misreading of different language in a different factual context. The District Court did not demonstrate, as a foundational matter, that the language allegedly misconstrued in each case was so similar as to infer that Garfinkle "should have known better" the second time around. Moreover, unlike sanctions imposed under the court's inherent powers, sanctions imposed for civil contempt do not require any finding of recklessness or bad faith. *In re Dyer*, 322 F.3d at 1196. Indeed, the Bankruptcy Court expressly stated in connection with its contempt ruling that it did not believe that Mr. Garfinkle had violated its order intentionally or in bad faith. [RJN, Ex. A at 30:18-21.] Accordingly, the District Court lacked foundation to use the Bankruptcy Court's imposition of sanctions against Buchalter Nemer—which were, in any event, subsequently waived pursuant to a settlement agreement—for any permissible purpose. *See* Fed. Rule of Evid. 404(b) (similar acts evidence can only

the pertinent facts highlighted at the hearings—for example, that neither SCIC nor the Trustee ever voiced any disagreement with Appellants' interpretation of the Stay Orders as severable with respect to each appeal until the District Court expressly rejected that reading.[17]  [ER562-563, 573-577.]  Yet Appellants' failure to interpret the Stay Orders in a manner that not even the beneficiaries of those orders advocated is not itself probative of reckless or knowing misinterpretation, and, under the rigorous standards set forth in cases like *Primus* and *Harris*, cannot support the issuance of sanctions in the absence of any other corroborative evidence.

To the contrary, the limited evidence before the District Court demonstrates, at the very worst, that Appellants inadvertently misread the District Court's ambiguous orders in the course of their advocacy, and then simply explained their conduct when called upon to do so.  The District Court's clearly erroneous assessment of this evidence, no more consistent with bad faith than with inadvertence, requires reversal.  *See MGIC Indem. Corp. v. Moore*, 952 F.2d at 1122 (reversing sanctions based on district court's perception that attorney "should

---

be admitted if, among other things, it bears enough resemblance to act in question and tends to show something other than propensity to commit act in question).

[17] Indeed, in the course of their pre-OSC communications regarding whether the scheduled foreclosure would violate the Stay Orders, opposing counsel apparently accepted this central premise of Appellants' position and argued only that the District Court's decision on Case No. 5537 was not "final" in light of the remand. [ER562-563, 573-577.]

have known" his position was meritless, because such observations are no more consistent with bad faith than with negligence).

### III. The District Court Also Erred In Imposing Sanctions Under 28 U.S.C. § 1927

An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 sanctions are justified in only the most egregious of cases, *Doe v. Univ. of the Pac*., 2010 WL 5129530 at *1 (E.D. Cal. Dec. 8, 2010), and require a detailed factual finding of "subjective bad faith." *In re Keegan Mgmt. Co. Sec. Litig*., 78 F.3d 431, 436 (9th Cir. 1996). Because the District Court did not and could not properly make such a finding based on the record before it, the June 20 Order awarding sanctions purportedly pursuant to section 1927 was an abuse of discretion and must be reversed.

#### A. The Court Imposed Section 1927 Sanctions Without Any Evidence of Subjective Bad Faith

Subjective bad faith is only established for purposes of section 1927 where an attorney recklessly raises a frivolous argument which resulted in the multiplication of proceedings. *Keegan*, 78 F.3d at 436; *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986). Thus, before imposing sanctions under section 1927, the District Court was required to determine two distinct elements based on specific evidence: (1) that Appellants advanced a truly frivolous argument, and (2)

that Appellants did so with at least a reckless state of mind. *See*, *e.g.*, *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 n.12 (9th Cir. 2000) (describing "the state of mind of the offender" as the principal fact issue in section 1927 cases). Here, there was insufficient evidence to support either finding.

### 1. Appellants' Argument Was Not Frivolous

It goes without saying that not all losing arguments are "frivolous" for the purpose of imposing sanctions. Rather, "frivolous" is a term of art applicable only to the exceedingly rare argument that is "both baseless and made without a reasonably competent inquiry." *In re Keegan*, 78 F.3d at 434 (defining frivolousness for purposes of Rule 11 and section 1927 sanctions). *See also Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003) (appeal is frivolous for purposes of awarding sanctions under FRAP 38 if it is "wholly without merit" or its result entirely "obvious" ); *Wolters*, 564 F.3d at 114 (conduct is "entirely without color" and therefore warranting sanctions under section 1927 when it "lacks any legal or factual basis; it is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue."). Courts are particularly cautioned not to deem an argument "frivolous" when there is "very little case law directly apposite." *Karam*, 352 F.3d at 1195-96 ("In view of the absence of Ninth Circuit authority on the…issue, we

cannot say that our resolution of [appellant]'s seizure argument was "obvious" or that [his] Fourth Amendment claims were otherwise frivolous.").  In cursory fashion here, the District Court erroneously elevated Appellants' argument (with which it had previously "half agreed") from purportedly "meritless" to "frivolous" without reference to any of these well-settled principles.  [ER17, ¶ 2.]

The argument with which the District Court took issue was Appellants' position that they could not be held in contempt because neither Appellants nor LAAC had violated any stay order still legally in effect.  The District Court had issued the same orders in two appeals staying foreclosure on the LAAC Parties' secured claims at issue in each appeal pending "resolution of the equitable subordination claims in the two appeals," but as Mr. Garfinkle consistently averred, he viewed the collateral at issue in each of the appeals to be entirely separate, and therefore interpreted this language to mean that the stay on foreclosure would last with respect to *each* bundle of collateral (as opposed to *both* bundles) until the equitable subordination issue relating to that collateral was resolved within its own respective appeal.[18]  [ER573-577, 515-519, 529-530, 513-514, 77:22-79:1, 79:25-80:9.]  Thus, as he stated repeatedly, Mr. Garfinkle was

---

[18] There is a substantial legal and factual basis for Mr. Garfinkle's view that the collateral was indeed different.  As explained in the court-ordered Separation Motion, the Film Library, currently owned by TFC, serves as collateral for the ThinkFilm Loan, of which LAAC is the current lender.  [ER334.]  Zelus is the lender under three separate loans (the "CT-1 Loan," the "SSE loan," and the "Capitol Films Loan") secured by entirely different collateral.  [ER334-335.]

convinced that the Stay Orders expired as to LAAC by their own terms upon

resolution of the appeal against LAAC. [*Id.*]

While the District Court summarily rejected this interpretation, stating in the

June 20 Order that its Stay Orders "could not have been any more clear,"[19] [ER16,

¶ 4], the District Court itself subsequently amended its Stay Orders as follows:

> "Accordingly, the Court STAYS any foreclosure on
> LAAC **and** Zelus's alleged claims to the bankruptcy
> estates until final resolution of **both** In re Capitol Films
> Development, LLC, No. 13-cv-9493 PSG and In re
> R2D2, LLC, No. 14-cv-2207 PSG." (emphases in
> original).

[ER34, ¶ 3.] By this revision, the District Court at least implicitly conceded the

ambiguity present in the original Stay Orders, which were reasonably read as

disjunctive in referring to the appeals, and not conjunctive. And, significantly,

neither SCIC nor the Trustee took any issue with Appellants' characterization of

the original Stay Orders before the District Court rejected it. [ER562-563, 573-

577.] Accordingly, Appellants' argument regarding the wording of the Stay

Orders was not without basis, and it was certainly not frivolous.

In any event, Appellants' argument was also consistent with the doctrine that

a court loses appellate jurisdiction to issue or enforce orders, including stay orders,

as soon as it issues a final decision and a mandate concluding the appeal. *See*

---

[19] Earlier, the District Court had referred to the Stay Orders at the May 5 hearing as
only "pretty" clear. [ER144:12-13.]

*Sgaraglino v. State Farm Fire & Cas. Co.*, 896 F.2d 420, 421 (9th Cir. 1990)

(appellate jurisdiction terminates upon issuance of mandate); *Campbell v. Wood*,

18 F.3d 662, 688 (9th Cir. 1994) (with issuance of mandate, stay pending appeal

loses force and effect); *Desta v. Ashcroft*, 365 F.3d 741, 750 (9th Cir. 2004)

(same). *See also Hi-Lex Controls, Inc. v. Blue Cross & Blue Shield of Michigan*,

No. 11-12557, 2014 WL 3928451, at *3 (E.D. Mich. Aug. 12, 2014) ("'The power

of a district court to grant a stay of judgment pending appeal [under Federal Rule

of Civil Procedure 62(d)] terminates when the Court of Appeals issues its

mandate,' and any stay issued by a district court during the pendency of an appeal

expires.").

In this case, on April 25, 2014, the District Court issued a final order

affirming the Bankruptcy Court's dismissal of SCIC's second amended complaint

against LAAC, but reversing and remanding the dismissal of SCIC's equitable

subordination claims. Pursuant to the well-settled principles outlined above,

Appellants concluded that the District Court's actions effectively returned

jurisdiction over that case (and any stay orders appropriate thereto) to the

Bankruptcy Court. The District Court even apparently agreed, at least tentatively,

with this assessment at the May 5 hearing. [ER143:19-24.] Accordingly,

Appellants argued, the stay on foreclosure pertaining to that case expired by

operation of law, regardless of how the language of the order itself might be

interpreted. [ER520-522.] As noted, this argument was supported by sound legal authority. Thus, even if the argument was ultimately found wanting, it was not nearly so baseless as to be properly deemed frivolous. *See Gibson v. Attorney General*, 561 F.3d 920, 929 (9th Cir. 2009) (claim not frivolous where question not clearly answered by precedent).

Finally, at both hearings, Appellants also argued that even if the Stay Orders were still in full force and effect, they did not violate them because they had not actually foreclosed on any of the collateral identified in the order, but merely continued a foreclosure sale previously noticed. [ER142:9-11, 142:24-143:2, 70:25-71:4.] As described in Section II(A), above, it is settled that merely continuing a foreclosure sale already noticed is not a violation of even far broader stay orders than those at issue here. *See*, *e.g.*, *In re Roach*, 660 F.2d at 1318-19. Thus, the fundamental argument that no violative "foreclosure" took place without the occurrence of an actual sale was supported by a substantial body of law (indeed, that point is axiomatic), and thus should not have properly warranted sanctions under a standard that requires the argument to "lack any legal or factual support."

In sum, each of the arguments Appellants advanced in their own defense was supported by legal authority, and therefore not frivolous by definition. Moreover, the arguments were consistent with the explanations Appellants gave to opposing

counsel prior to issuance of the OSC and the hearings thereon. [ER573-577, 529-530.] Accordingly, the District Court's determination that Appellants concocted "frivolous" arguments to justify their conduct after the fact is without any support in the record and was a clear abuse of discretion.

### 2. There Was No Evidence of Recklessness

For the same reasons described in Section IV(B)(2) above, the District Court did not make an adequate determination based on any specific evidence that Appellants acted either knowingly or recklessly when they engaged in or explained conduct that the District Court erroneously deemed to have violated its orders. Nor can Appellants be deemed to have acted recklessly by filing further briefing on the same argument *when the District Court expressly ordered them to do so*. [ER146:11-16, 150, 14, ¶ 1.]

### B. Section 1927 Does Not Support the Issuance of Sanctions for the Additional Reason that Appellants's Purportedly Sanctionable Conduct Did Not Actually Multiply the Proceedings

By its express terms, section 1927 addresses only attorneys who unreasonably and vexatiously multiply proceedings. It does not come into play every time parties to litigation have disagreements that require court intervention. *See*, *.e.g*., *Autorama Corp. v. Stewart*, 802 F.2d 1284, 1288 (10th Cir. 1986) ("The reviewing court must resist the temptation to engage in post hoc reasoning by concluding that because a plaintiff did not ultimately prevail, the action must have been wholly unreasonable and without proper foundation.") Thus, the court

46

imposing sanctions under section 1927 must find that the accused's arguments, in addition to being both frivolous and reckless, actually caused an unreasonable multiplication of legal proceedings.

Here, even if Appellants' conduct was not warranted by the purportedly "clear" language of the Stay Orders, there is no direct link between that conduct and the Emergency Motions for which the sanctions are purportedly intended to compensate.[20] First, the dispute that actually lead SCIC and the Trustee to file their emergency motions after the April 11 Stay Order and the order on April 25 disposing of the LAAC appeal had nothing to do with the particular language that the District Court believed Appellants to have willfully misinterpreted (namely, the use of "appeals" in the plural to purportedly signify that the Stay Orders would last until final resolution of certain issues within both appeals). To the contrary, prior to the May 5 hearing, SCIC and Trustee apparently agreed with Appellants' interpretation that the Stay Orders addressed the two appeals separately. Instead, the parties joined issue only on the Stay Orders' use of the term "final resolution." Specifically, SCIC argued that the District Court's April 25 reversal of the Bankruptcy Court's order dismissing the equitable subordination claims was not a "final resolution" of the equitable subordination issue signifying the termination of

---

[20] Although the sanctions were also imposed to compensate for expenses related to the Separation Motion, [ER17, ¶ 3], the Separation Motion cannot be the basis for sanctions. After all, the District Court directly instructed Appellants to file that particular motion. [ER146:11-16, 150, 14, ¶ 1.]

the Stay Orders because the equitable subordination claims were remanded to the Bankruptcy Court for further findings on the merits. [ER562-563, 573-577.] Appellants, on the other hand, asserted that, despite the remand, the District Court's order nevertheless constituted a "final resolution" of the only equitable subordination issue presented "within the appeal," as specified in the April 11 Stay Order. [ER573-577.]

Significantly, the District Court never analyzed or even mentioned the proper interpretation of the "final resolution" language underlying the dispute that actually triggered the Emergency Motions. Because the District Court never even addressed whether Appellants' interpretation of the "final resolution" language was incorrect, let alone frivolous and reckless, it never entered any finding at all as to whether the conduct that lead to the (purportedly unreasonable) multiplication of proceedings was sanctionable. Likewise, the District Court never properly determined that the multiplication of proceedings was actually caused by the misinterpretation that it did (erroneously) find sanctionable.

Moreover, from Appellants' standpoint, refusing SCIC's or the Trustee's (arguably erroneous) demands to acquiesce in their interpretation of the "final resolution" language in the Stay Orders was no more than zealous advocacy. As part of that refusal, telling the other parties, in so many words, as Appellants did, that they should do "what they need to do" to enforce their own clients' rights is a

time-worn expression, and cannot be seriously taken as a direction to file

unnecessary emergency motions.  Rather, Appellants could have been subjected to

a simple contempt order if and when a foreclosure sale in violation of the Stay

Orders actually came to pass, at which time the District Court would have had the

power to void the sale and hold Appellants accountable for the cost of the

contempt proceedings.  Appellants are not responsible for the Appellee's

unreasonable decision to file several preemptive motions, instead, and should

certainly not be held responsible for the extra briefing expressly ordered by the

District Court.

**IV.  In Any Event, the District Court Provided Insufficient Advance Notice of the Particular Grounds for Sanctions, Meriting Reversal on Independent Due Process Grounds**

Due process requires courts to provide notice and an opportunity to be heard

before imposing sanctions under either 28 U.S.C. § 1927 or its inherent powers.

*See*, *e.g*., *In re Deville*, 361 F.3d 539, 548-50 (9th Cir. 2004); *Ted Lapidus, S.A. v.

Vann*, 112 F.3d 91, 96 (2d Cir. 1997).  In particular, a sanctioned attorney must

receive specific notice both of the conduct alleged to be sanctionable "and the

standard by which that conduct will be assessed."  *Lapidus*, 112 F.3d at 96 (notice

of Rule 11 sanctions was procedurally defective to award sanctions under section

1927); *In re DeVille*, 361 F.3d at 548-50 (court imposing sanctions must notify the

person charged "both of the particular alleged misconduct and of the particular

disciplining authority under which the court is planning to proceed"); *Foster v.*

*Wilson*, 504 F.3d 1046, 1052 (9th Cir. 2007) ("The purpose of particularized notice is to put counsel on notice as to the particular factors that he must address if he is to avoid sanctions.").  A court's failure to provide such particularized notice invalidates the sanctions imposed unless "particularized notice as to one sanction would arguably suffice to fully inform [the accused] as to the pendency of the other sanction." *In re DeVille*, 361 F.3d at 548.  Whether notice was sufficient to satisfy due process is reviewed de novo.  *Id.*

> **A.** **The District Court Provided Absolutely No Advance Notice That Would Have Enabled Appellants to Properly Defend Themselves From Section 1927 Sanctions.**

The first notice Appellants received of potential sanctions was the District Court's May 2, 2014 OSC, which ordered Appellants to "show cause why (1) sanctions in excess of $1,000 should not be imposed against them; and (2) they should not be held in contempt of court for attempting to proceed with foreclosure."  [ER151.]  The OSC was predicated solely on the asserted violation of the Stay Orders and did not make any reference to section 1927, bad faith, or the multiplication of proceedings, at all.  Because section 1927 addresses conduct and requires specific findings different from contempt (namely, subjective bad faith), the OSC failed to put Appellants on notice of the full range of conduct they later stood accused of and the standard by which they would later be assessed.  *See In re DeVille*, 361 F.3d at 548.

Nor did the District Court give any indication that it was contemplating section 1927 sanctions at either of the two hearings following the OSC, where the District Court neither mentioned section 1927 nor voiced any concern for the multiplication of proceedings. To the contrary, at the May 5 hearing, the District Court required Appellants to submit further briefing on its argument that the separate collateral at issue in each appeal was not and should not have been subject to the same stay. [ER146:11-16, 150, 14, ¶ 1.] Accordingly, the very first reference to section 1927 as a basis for sanctioning Appellants appears in the court's June 20 Order imposing sanctions, at least in part, under that statute. [ER16, ¶ 2.] This glaring lack of notice denied Appellants due process, and the Court must reverse the sanctions, to the extent imposed under section 1927, on this additional basis. *See Foster*, 504 F.3d at 1052-53; *Lapidus*, 112 F.3d at 96-97.

**B.    The District Court Also Provided Inadequate Notice that Appellants Would Be Sanctioned Under the Court's Inherent Powers**

Before imposing sanctions under the court's inherent powers, the accused must receive "sufficient, advance notice" not only of exactly which conduct is alleged to be sanctionable, but also that they "[stand] accused of having acted in bad faith." *In re De Ville*, 361 F.3d at 549.

The OSC, which accused Appellants only of contempt for purportedly violating the Stay Orders, did not give express or even implied notice that Appellants stood accused of bad faith. [ER151.] Unlike inherent powers sanctions

for "willful disobedience" of a stay order, holding an attorney in civil contempt for "willful disobedience" of a stay order does not require any finding of bad faith.  *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003).  Rather, "willful disobedience" in the context of contempt proceedings means only that the attorney intended to do the actions which violated a court order, and not necessarily that they did so with knowledge that such actions constituted a violation.  *Id*.  Accordingly, the OSC did not give adequate notice either that the court contemplated sanctions under its inherent powers or, relatedly, that Appellants needed to defend themselves against a charge of bad faith.[21]

Rather, the first mention of the District Court's inherent power to sanction Appellants was at the May 27 hearing:

> MR. GARFINKLE: Your Honor, I understand the Court is going to deny the separation motion.  That's fine. . . . **But as to the OSC re contempt**, I would request the opportunity to have my counsel present given what the Court's comments were about the sanctions it's considering—
>
> THE COURT: **How about if we just say separate and apart from contempt, my inherent powers to award sanctions for violating my orders**.  Separate and apart from civil contempt.

---

[21] That Appellants believed they stood accused of no more than civil contempt is confirmed by LAAC's brief in response to the OSC, in which Appellants argued only, and accurately, that they and their clients had not actually violated the Stay Orders.  [ER515.]

[ER77:12-21.] (emphases added). Finally understanding the serious nature of the conduct of which he was accused, Garfinkle requested multiple times to testify under oath, with the benefit of counsel, as to his good faith in connection with each of his purportedly sanctionable communications with opposing counsel regarding the Stay Orders. [ER72:14-22, 87:8-13, 88:7-10, 133:12-18, 136:10-12.] This opportunity was never afforded him.

Instead, the District Court imposed sanctions based only on the necessarily incomplete record because of Appellants' failure to receive notice of the allegations against them. This was error and requires reversal on this independent basis, as well. *See Foster*, 504 F.3d at 1052-53 (sanctions imposed without advance notice of the particular grounds therefor "cannot stand").

## CONCLUSION

Appellants respectfully request the Court reverse, in their entirety, the District Court's August 6, 2014 and August 8, 2014 orders awarding sanctions to Appellees, entered in Case Nos. 2:13-cv-9493 and 2:14-cv-2207, respectively, as well as the underlying June 20 Order entered in Case Nos. 2:13-cv-9493 , 2:14-cv-2207, and 2:13-cv-5537.

Dated: January 9, 2015

DRINKER BIDDLE & REATH LLP

By: /s/ Sheldon Eisenberg

George C. Webster
Sheldon Eisenberg
Alexis N. Burgess
*Attorneys for Appellants*
Jeffrey K. Garfinkle and Buchalter
Nemer, A Professional Corporation

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because it contains 13,680 words, excluding the corporate disclosure statement, table of contents, table of authorities, and this certificate, which are exempted from the type-volume limitation by FRAP 32(a)(7)(B)(iii).  This brief also complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared in 14-point Times New Roman font, a proportionally spaced typeface, with Microsoft Word 2010 word processing software.

Dated:  January 9, 2015                    DRINKER BIDDLE & REATH LLP


By:  /s/ Sheldon Eisenberg
    George C. Webster
    Sheldon Eisenberg
    Alexis N. Burgess

*Attorneys for Appellants*
Jeffrey K. Garfinkle and Buchalter
Nemer, A Professional Corporation

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Appellants hereby give notice of the

following related cases pending before this Court:

| Name | Appeal No. |
|------|-----------|
| In re: R2D2, LLC (Ronald Tutor, et al. v. Ronald L. Durkin) | 12-56481 |
| In re: R2D2, LLC (David Bergstein v. Ronald L. Durkin) | 12-56483 |
| In re: R2D2, LLC (Aramid Entertainment Fund, et al. v. Ronald Tutor, et al.) | 13-55029 |
| In re: R2D2, LLC (Screen Capital International Corp. v. TFC Library, LLC) | 14-55628 |
| In re: CapCo Group, LLC (Screen Capital International Corp. v. TFC Library, LLC) | 14-55629 |
| In re: Capitol Films Development, LLC (Screen Capital International Corp. v. TFC Library, LLC) | 14-55631 |
| In re: CT-1 Holdings, LLC (Screen Capital International Corp. v. TFC Library, LLC) | 14-55632 |
| In re: ThinkFilm, LLC (Screen Capital International Corp. v. TFC Library, LLC) | 14-55642 |
| In re: R2D2, LLC (Jeffrey Garfinkle, et al. v. Screen Capital International Corp.) | 14-56451 |
| In re: Capitol Films Development, LLC (Jeffrey Garfinkle, et al. v. Screen Capital International Corp.) | 14-56452 |
| In re: ThinkFilm, LLC (Library Asset Acquisition Company, Ltd. v. Screen Capital International Corp.) | 14-56495 |
| In re: ThinkFilm, LLC (Screen Capital International Corp. v. Ronald L. Durkin) | 14-57002 |

| In re: ThinkFilm, LLC (Library Asset Acquisition Company, Ltd. v. Ronald L. Durkin) | 14-57003 |
| In re: ThinkFilm, LLC (Aramid Entertainment Fund Limited, et al. v. Ronald L. Durkin) | 14-57004 |
| In re ThinkFilm, LLC (David Bergstein v. Ronald L. Durkin) | 14-57005 |

Each of the above-listed appeals challenge orders entered by the Central District on appeal from the same group of bankruptcy cases and related adversary proceedings from which Appellants' present appeal ultimately stems. In appeal Nos. 1456451 and 14-56452, Appellants seek review of the same June 20, 2014 order entered in three such Central District proceedings.

Dated: January 9, 2015                    DRINKER BIDDLE & REATH LLP

By: /s/ Sheldon Eisenberg
    George C. Webster
    Sheldon Eisenberg
    Alexis N. Burgess

*Attorneys for Appellants*
Jeffrey K. Garfinkle and Buchalter
Nemer, A Professional Corporation

| 9th Circuit Case Number(s) | 14-564531 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Jan 9, 2015 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Jan 9, 2015 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Screen Capital International Corp. (in pro per)
c/o David Molner/Sanjay Sharma
345 North Maple Drive
Suite 294
Beverly Hills, CA 90210

Signature (use "s/" format)    /s/ Alexis N. Burgess